ORIGINAL

FILED
MAR 5 2008
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| TIDEWATER CONTRACTOR'S, INC. | ) | |
| | ) | No. |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | 08-128 C |
| | ) | |

## COMPLAINT

Allegations Common to All Claims

1. This court has jurisdiction pursuant to the Contract Disputes Act, 41 U.S.C. Section 601, et seq. and 28 U.S.C. Section 1491(a)(2).

2. Plaintiff, Tidewater Contractors, Inc., is an Oregon corporation.

3. The United States, by and through the U.S. Department of Transportation, entered into a contract with Tidewater Contractors, Inc. entitled Mad River Road, Contract No. DTFH68-04-C-00003.

4. Plaintiff performed all the work within the contract time, as adjusted for appropriate winter suspensions.

5. The contract provided for and specifically referenced anticipated winter suspensions and winter shutdown at several locations in the Special Contract Requirements.

6. The Defendant ignored it's obligation to suspend the contract time for winter suspension, despite plaintiff's request to Defendant that a winter suspension be issued for the period November 15, 2005 and April 24, 2006. Defendant thereafter continued to count Contract Time during the November 15, 2005 to April 24, 2006 period, and as result

assessed liquidated damages for 161 days (number of days in the requested winter suspension which were erroneously counted by the Defendant as Contract days). Additionally, had Defendant properly suspended Contract Time for the requested winter suspension, plaintiff would have been entitled to 4 additional days as a result of periods following winter suspension which limited operations under the Special Contract Requirements and during which plaintiff was required to continue performance. Defendant wrongfully assessed liquidated damages for this period and during other contract periods for which time should have been granted.

7. Defendant assessed 165 days of Contract Time and liquidated damages @ $1,800 a day wrongfully.

8. On August 10, 2007, plaintiff filed a claim with Defendant, designated by defendants as Claim XVI-07-003, CAPFH 149-1(2), seeking to have the 165 days of Contract time erroneously charged by Defendant changed to non-chargeable days, and for the payment of $297,000 of contract payments to Plaintiff which had been wrongfully assessed and withheld as liquidated damages from progress payments otherwise due Plaintiff.

9. Defendant issued a Contracting Officer's Decision on this claim on December 14, 2007, a copy of which is attached hereto as Exhibit 1 and by this reference incorporated herein.

10. The Contracting Officer's Decision wrongfully denies Plaintiff's claim and continues Defendant's breach of its contract with Plaintiff by refusing to pay to Plaintiff the $297,000 which has been wrongfully withheld from Plaintiff , as purported liquidated damages.

11. In addition to Claim XVI-07-003, CAPFH 149-1(2), Plaintiff has additional claims which

likewise seek both monetary damages and additional contract time within which Plaintiff would have to perform the contract, based upon claims of government caused delay. These claims are not yet the subject of a Contracting Officers Decision and therefore not ripe for inclusion in this Complaint.

12. In this action, the Plaintiff asks the Court to determine only: a) whether Plaintiff was entitled to the winter suspension it requested, from November 15, 2005 to April 24, 2006 (and thereby the corresponding 161 day for day extension of the dates by which Plaintiff was to achieve substantial and final completion of the work under the Contract; b) for an additional 4 Contract Days, to compensation for non-chargeable days occuring during the extended contract period following, after resumption of Contract Time on April 25, 2006; and c) for payment of damages in the amount of $297,000 which amount was assessed by Defendant as liquidated damages and thereafter improperly withheld from progress payments otherwise due Plaintiff.

13. Defendant has assessed a total of 243 days of liquidated damages at $1,800 per day (substantial completion) and 82 days of liquidated damages at $360 per day (final completion), for total liquidated damages of $466,920, which amount has been withheld from contract payments otherwise due Plaintiff. The claims which are alleged in Paragraph 11, but which cannot be joined in this lawsuit, seek contract time extensions which would extend the Contract Completion Dates beyond the actual dates Plaintiff achieved substantial and final completion of Project. Plaintiff hereby specifically reserves any and all rights, whether contractual, statutory or based in the common law. No such rights, duties or obligations are waived or intended to waived by the filing of

this action.

Wherefore, Plaintiff prays for judgment on its complaint as follows:

a) For a declaration that Plaintiff was entitled to the winter suspension it requested, from November 15, 2005 to April 24, 2006 (and thereby the corresponding 161 day for day extension of the dates by which Plaintiff was to achieve substantial and final completion of the work under the Contract);

b) For a declaration that an additional 4 Contract Days, to compensate for non-chargeable days occurring during the extended contract period following resumption of Contract Time on April 25, 2006; and

c) For a judgment in the amount of $297,000, together with Prompt Payment interest thereon from the date(s) such amounts were withheld from payments otherwise due to Plaintiff until Defendant received the August 10, 2007 and thereafter interest at the Contract Disputes Act rate until paid in full; and

d) For an award of Plaintiff's attorney fees incurred herein, pursuant to the Equal Access to Justice Act.

DATED this 4 day of March, 2008.

Joseph A. Yazbeck, Jr.
YAZBECK, CLORAN & HANSON, LLC
1300 SW 5th Ave., Suite 2750
Portland, Oregon 97201
Tel: 503-227-1428
Fax: 503-227-4866

U.S. Department of Transportation
Federal Highway Administration

Central Federal Lands Highway Division

12300 West Dakota Avenue
Suite 210A
Lakewood, CO 80228

December 14, 2007

In Reply Refer To: HFCO-16

CERTIFIED MAIL – RETURN RECEIPT REQUESTED

Mr. Scott Fitzhugh
Tidewater Contractors, Inc.
16156 Highway 101 South
Brookings, OR 97415

Dear Mr. Fitzhugh:

Subject: Final Decision on Claim for Additional Compensation
Claim No. XVI-07-003, CA PFH 149-1(2), Mad River Road
Contract No. DTFH68-04-C-00003

This is the Contracting Officer's final decision with regard to the above referenced claim for additional compensation. This decision is being issued in accordance with the provisions of the Disputes clause of the contract, FAR 52.233-1.

## I. THE CONTRACT

On November 26, 2003, the Federal Highway Administration (FHWA or Government) awarded to Tidewater Contractors, Inc. (Tidewater or the Contractor), Contract No. DTFH68-04-C-00003, a fixed-unit-price variable quantity contract in the amount of $11,435,825.00 for the construction of California PFH 149-1(2), Mad River Road. The contract provided for the rehabilitation of 11.002 km of roadway including grading, paving, bridge, structural fills and drainage work. The project is located in the Six Rivers – Trinity National Forest, Trinity County, California.

The contract cites the Standard Specifications for Construction of Roads and Bridges on Federal Highway Projects FP-96 (FP-96), and incorporated the Federal Acquisition Regulations (FAR) contract clauses for construction, Labor Standards Provisions, Special Contract Requirements (SCR), Bid Schedule, and Plans.

The solicitation and invitation for bids were issued on September 30, 2003. No Amendments to the solicitation were incorporated.

Bids were opened at 2 p.m. on October 30, 2003, in the Federal Highway Administration's Division office in Sacramento, California. Tidewater submitted the lowest of six responsive bids, which ranged from $11,435,825.00 to $18,017,606.50.

The contract was awarded on November 26, 2003. The Notice to Proceed letter was issued on April 6, 2004. The original contract completion date was August 10, 2005. There were four time extensions granted during the course of the project which amounted to a total of 136 calendar days. Final Inspection was achieved on September 20, 2006 and the Final Acceptance Date of the contract has yet to be established.

Five Contract Modifications were executed during the course of the project to date:

**CO 0001:** Dated November 24, 2004: This Unilateral Modification directed the Contractor to provide two 3.6 meter wide paved travel lanes covering all sections of the roadway within the project limits which were not currently paved or did not conform to Subsection 108.01(a). This modification did not affect contract time.

**CO 0002:** Dated December 16, 2005: This Unilateral Modification provided the Contractor a 20 calendar day time extension due to unusually severe weather during a period from October 2004 to June 2005. This modification increased the contract time by 20 calendar days. This modification was issued unilaterally due to the lack of any supporting critical path analysis from the Contractor, but a realization by the Government that the weather did impact the schedule and the extension of time was warranted. The revised completion date as a result of this modification was established as August 30, 2005.

**CO 0003:** Dated April 10, 2006: This Unilateral Modification provided for unforeseen costs to the Contractor as a result of making repairs to the structural section of the Mad River Road Phase I pavement. The modification provided for a mechanism of payment for determining areas of required repair and intended to eliminate all possible delays to the Contractor as a result of the repair situation. This modification increased the contract time by 7calendar days. The revised completion date as a result of this modification was established as September 6, 2005.

**CO 0004:** Dated July 7, 2006: This Unilateral Modification provided the Contractor a 20 calendar day time extension due to slope repairs that were completed between April 25, 2006 and June 21, 2006 that resulted from winter weather related damage. This modification increased the contract time by 20 calendar days. The revised completion date as a result of this modification was established as September 26, 2005.

**CO 0005:** Dated July 13, 2007: This Unilateral Modification provided the Contractor an 89 calendar day time extension as a result of the decision by the Civilian Board of Contract Appeals. This modification increased the contract time by 89 calendar days. The revised completion date as a result of this modification was established as December 24, 2005.

## II. THE CLAIM

On August 23, 2007, the FHWA received a letter dated August 10, 2007, from Tidewater Contractors, Inc, regarding the claim. Tidewater requested a 165 day extension in the contract completion date in its claim. One hundred and sixty one days are associated with a winter suspension from November 15, 2005, to April 24, 2006, which Tidewater argues is implied in the contractual restriction on contractor operations. Tidewater requests four additional days around the 2006 Memorial Holiday weekend, which Tidewater contends falls within its calculated revised completion date of June 3, 2006, and during which Tidewater argues the contract prohibits operations. Tidewater is requesting the return of 165 days of assessed liquidated damages at $1,800.00/day.

Therefore, the total value of the claim as submitted is **$297,000.00**.

The claim and accompanying certification meet the requirements of FAR Clause 52.233-1, Disputes.

## III. FINDINGS AND DETERMINATION

Tidewater correctly calculates that the two contract modifications which relate to contract operations prior to 2006, #002 and #005, added 20 and 89 days, respectively, to the contract time, thus bringing the completion date to November 27, 2005. Because this date is after the winter suspension period, allegedly implied in Sec. 108.01(a) of the Special Contract Requirements, Tidewater goes on to argue, it is entitled to be excused from liquidated damages during the entire period of the winter suspension period, from November 15, 2005, through April 24, 2006. Tidewater asserts that it could not reasonably schedule paving and successor activities during this period because of severe weather and the restriction on activities in SCR 108.01(a).

Adding to the contract period the claimed 161 days and the two modifications relating to contract operations during spring 2006, # 003 and 004, which added 7 and 20 days, respectively, results in a contract completion date of June 3, 2006, according to Tidewater. Because this period includes the Memorial Day holiday, during Friday through Monday of which Section 108.01 of the contract prohibits the contractor from working, Tidewater claims an additional four days must be added to establish the contract completion date of June 7, 2006. This would result in a total of 165 days of liquidated damages.

Contrary to Tidewater's claim, the contract neither provided for nor implied a winter suspension. In fact, despite Tidewater's assertion that its operations were restricted by the contract and the weather, Tidewater scheduled and performed paving and other work during the period of the so-called winter suspension.

Tidewater cites SCR 108.01(a) as proof of the intended suspension. SCR 108.01(a) provides:

"Confine roadway construction operations to a cumulative length not to exceed 4000 meters of two-lane roadway without existing pavement or the first lift of new pavement in place. Do not

remove or pulverize the pavement on any portion of the existing roadway outside the cumulative length until all portions within the cumulative length have been completed through the first lift of asphalt according to the contract plans and specifications. *Additionally areas open to construction must be completed through the first lift of asphalt prior to November 15.* The CO may increase the construction limits of any area of construction if the Contractor can illustrate, by means of construction schedule and current construction rates, that the work will meet the above requirements and will be completed prior to November 15. *Do not remove the pavement from any of the existing roadway between November 1 and April 1 without the prior approval from the CO.* Include construction of the intersection with SH 36 within the first season of work.

Remove all dirt and debris from the existing pavement within the project limits each day upon completion of construction operations. All damaged pavement within the project limits must be patched or repaired prior to winter shutdown or November 15 at no cost to the Government. Patch or repair all damaged pavement according to Section 417 to provide a maintainable temporary roadway surface. Failure to repair damage to existing pavement will result in suspension of project work in accordance with Subsection 108.05. Suspension will remain in effect until the pavement conditions are improved to the satisfaction of the CO and the Trinity County Department of Transportation."

The Government finds no direction for or recognition of a winter suspension in SCR 108.01, or anywhere else in the contract. Tidewater believes the suspension is provided in the highlighted sentences and fixes the beginning date at November 15 because the contract states, "Areas open to construction must be completed through the first lift of asphalt prior to November 15." Tidewater also believes the sentence, "Do not remove the pavement from any of the existing roadway between November 1 and April 1 without prior approval from the CO" in some way supports its argument for a winter suspension, although exactly how is not explained.

In the first place, these are two restrictions on a relatively small percentage of the overall work on the project and certainly have no bearing on the Contractor working on many other aspects of the project after November 15 and 1, respectively. More importantly, Tidewater's progress on the project in fall 2005 was such that by November 15 it had already removed all existing pavement and nearly completed placement of the entire first lift of asphalt. Project records indicate that, in fact, Tidewater was on the project site performing first lift paving work through December 16, when it was completed. Records also indicate that Tidewater temporarily striped the roadway in January 2006. Therefore, from November 15 through December 16, Tidewater was performing the very work that it is now alleging was prohibited during that period. Contrary to Tidewater's claim, neither paving nor any other operations were prohibited after November 15, but the contract did require that at least the first lift of pavement be placed by that date. More could have been placed, i.e. the second lift of pavement, if weather and other contract requirements could be met. In fact, paving operations were allowed after November 15 during periods that offered acceptable temperature and other weather conditions. Obviously, the Government was concerned about a non-paved surface remaining after the November 15 date due to normally wet weather expected after that date and the problems associated with maintaining a non-paved surface through the winter. The specific requirement of Section 108.01(a) was intended to assure accomplishment of a certain amount of paving prior to November 15, not to restrict any otherwise acceptable paving operations after that date. There

was no contractual restriction on paving past that date, as evidenced by Tidewater paving operations that were allowed after November 15, as noted above. The November 15 requirement in the contract had no actual effect on Tidewater's operations. Paving was allowed after November 15, and by December 16 the entire first lift was in place, thus rendering the alleged restriction in SCR 108.01(a) moot and incapable of serving as support for a winter suspension. In fact, project records indicate that Tidewater did work well past November 15 in both the winter of 2004/2005 and 2005/2006.

Tidewater also argues that Modification 0002 recognized a winter suspension. Modification 002 was issued on December 16, 2005, to unilaterally extend the contract completion date by 20 calendar days. The extension was granted due to accumulated weather-related delays which occurred from October 18, 2004, through June 18, 2005. The 20 calendar days were ultimately granted unilaterally because Tidewater did not provide sufficient supporting data to show how the critical path on the construction schedule was affected by these weather occurrences. Tidewater does not explain how this modification amounts to a "recognition of a winter suspension," and the Government finds that it does not.

Tidewater asserts that Modifications 003 and 004 establish the end date of the winter suspension period. As shown above, there was no winter suspension provided in the contract, and thus no reason to define or identify an end date. Modification 0003 was issued on April 10, 2006, to unilaterally direct Tidewater to perform repair work on the Phase 1 section of Mad River Road. This repair work was necessitated by the fact that Tidewater had not completed work on the project by spring 2006 and the much earlier-placed Phase 1 pavement was considerably past the point of its intended design life. Modification 0004 was issued on July 7, 2006, to unilaterally extend the contract completion date by 20 calendar days. The extension was granted as a result of slope repairs performed by the Contractor between April 25, 2006, and June 21, 2006, and necessitated by winter weather-related damage. (The two modifications extend the contract completion date to December 24, 2005.) Merely because Tidewater chose to return to the project in force on April 24, 2006, and begin to perform the modified contract work does not establish either a winter suspension or its end date.

Finally, throughout the claim Tidewater attempts to find support for a winter suspension of contract time in its schedules. Tidewater states in its claim, "The winter shutdown or suspension... was specifically identified in the initial approved schedule and all subsequent project schedules." Tidewater seems to believe its scheduling of suspension periods should excuse the periods from contract time. The Government does not argue that the Contractor may, in its discretion, schedule a winter, or any other, suspension. The Government simply expects that a Contractor will manage its work to assure that the project is completed on time, regardless of suspensions, delays, or any other non-work periods that it imposes on itself.

The initial schedule that was "accepted" by FHWA was dated June 26, 2004, and was received by FHWA on July 1, 2004. This schedule shows the Contractor starting on-site construction operations on April 8, 2004, and completing the project on August 10, 2005. There is a winter suspension identified in this schedule from December 17, 2004, to February 7, 2005. This suspension was imposed by Tidewater on itself. With the exception of those days provided in Modification 002 for unusually severe weather, which may have fallen within this time period, there was no 2004/2005 contractually ordered winter suspension.

The most recent schedule that the Government received from Tidewater is dated August 3, 2006, and was received by FHWA on August 4, 2006. This schedule, which incidentally does not logically tie to the initial schedule, shows the Contractor mobilizing on April 4, 2004, and completing the project on August 16, 2006. There is a winter suspension identified in this schedule from January 26, 2006, to April 24, 2006. Yet, Tidewater is requesting in the claim a winter suspension beginning on November 15, 2005. Therefore, not only can a schedule not support a winter suspension in general, but Tidewater's schedule actually does not support its request for a suspension in fact.

Tidewater argues that the contract and winter weather dictate a winter suspension period. Though there is no winter suspension provided in the contract, there is a provision for excusing delays caused by unusually severe weather. It is noted that Tidewater sought in a prior request for adjustment, since withdrawn, to have certain days excused based on unusually severe weather. Beyond a passing reference to poor winter weather at the project site supporting its argument for a winter suspension, Tidewater makes no showing of how any specific unusually severe weather affected its operations in the winter of 2005/2006. Tidewater remains, of course, free to claim excusable delays caused by unusually severe weather, in accordance with the showing required by FP-96, Sec. 108.03 of the contract.

Finally, because Tidewater's claim for a winter suspension of 161 days is denied, the contract completion date remains as December 24, 2005. There is, therefore, no impingement on the 2006 Memorial Day holiday and the contract language prohibiting operations during the holiday is irrelevant. Thus, Tidewater's claim for an additional 4 day days is also denied.

## IV. CONCLUSION

The Government has identified that there is no information with respect to contract, schedule or actual conditions which supports the Contractor's request for 165 days of Liquidated Damage relief. Therefore, the claim is denied in whole.

With respect to all future correspondence related to disputes on this project, please address those to Mr. Kevin Black, Contracting Officer, or myself, as we will be the Contracting Officers responsible for resolution of these disputes. Mr. Kevin Black, Contracting Officer, and I both have sufficient warrant authority to address any and all issues presented to date.

This is the Contracting Officer's final decision on the matter and is being issued pursuant to FAR 52.233-1, Disputes, of the contract. You may appeal this decision to the Civilian Board of Contract Appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the Civilian Board of Contract Appeals, addressed as follows:

Office of the Clerk of the Board
Civilian Board of Contract Appeals
1800 F Street, NW
Washington, D.C. 20405

In addition, you must provide a copy of your notice of appeal to the Contracting Officer from whose decision the appeal was taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. With regard to appeals to the Board of Contract Appeals, you may, solely at your election, proceed under the board's small claim procedure for claims of $50,000 or less or its accelerated procedure for claims of $100,000 or less. As an alternative to the Board of Contract Appeals, you may bring an action directly to the United States Court of Federal Claims within 12 months of the date you receive this decision.

Sincerely,

F. David Zanetell, P.E.
Contracting Officer