**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| TIDEWATER CONTRACTORS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 08-128C |
| v. | ) | |
| | ) | (Judge Horn) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**JOINT STIPULATION OF FACTS AND APPENDIX**

Pursuant to this Court's July 14, 2008 order, the parties jointly and respectfully submit this joint stipulation of facts.[1]

**The Contract**

1. On November 26, 2003, the United States Department of Transportation, Federal Highway Authority ("FHWA") and Tidewater Contractors, Inc. ("Tidewater") entered into contract no. DTFH68-04-C-00003 (the "contract"), under which Tidewater agreed to perform certain work upon the Mad River Road in the Six Rivers-Trinity National Forest in exchange for the contract price of $11,435,825. A18-237 (copy of contract).

2. The contract modified Section 108.01 of the Standard Specifications For Construction Of Roads And Bridges On Federal Highway Projects (FP-96) (incorporated into the contract), to add, in pertinent part:

> Limit operations as follows: (a) Confine roadway construction operations to a cumulative length not to exceed 4000 meters of two-lane roadway without existing pavement or the first lift of new pavement in place. Do no remove or pulverize the pavement on any portion of the existing roadway outside the cumulative length until all portions within the cumulative length have been

[1] Due to its large size, the appendix is filed separately, by CD-ROM. An index is attached to the end of this stipulation.

> completed through the first lift of asphalt according to the contract plans and specifications. Additionally areas open to construction must be completed through the first lift of asphalt prior to November 15. The CO may increase the construction limits of any area of construction if the Contractor can illustrate, by means of construction schedule and current construction rates, that the work will meet the above requirements and will be completed prior to November 15. Do not remove the pavement from any of the existing roadway between November 1 and April 1 without prior approval from the CO. Include construction of the intersection with SH 36 within the first season of work.
>
> Remove all dirt and debris from ten existing pavement within the project limits each day upon completion of construction operations. All damaged pavement within the project limits must be patched or repaired prior to winter shutdown or November 15 at no cost to the Government. Patch or repair all damaged pavement according to Section 417 to provide a maintainable temporary roadway surface. Failure to repair damage to existing pavement will result in suspension of project work in accordance with Subsection 108.05. Suspension will remain in effect until the pavement conditions are improved to the satisfaction of the CO and the Trinity County Department of Transportation.

A138.

3. The contract also prohibited work on several specified days throughout the year: Memorial Day, Independence Day, Ruth Rodeo (first weekend in August), Renaissance Fair (second weekend in August), Labor Day, Columbus Day, and Veterans Day. A138-39. The contract did not prohibit work on Thanksgiving Day, Christmas Day, New Years Day, Martin Luther King, Jr.'s birthday, or Washington's birthday. Id. (days not listed). On November 9, 2005, FHWA added the Thanksgiving weekend to the list of "no-work holiday periods." A500.

4. Subsection (j) of contract section 154.03B -- Field Laboratory (Government-Furnished) -- states: "The rental rate is in effect for the duration of the contract, excluding periods of seasonal or other work shut-downs." A157.

5. Subsection (e) of contract section 156.08 -- Traffic and Safety Supervisor -- states:

> The Traffic and Safety Supervisor shall inspect all work zone traffic control devices on the project, including those in staging areas, on-site storage areas, material sources, and disposal/waste areas, as follows:
> (1) Daily during daylight hours when daylight work is being performed.
> (2) Daily during hours of darkness when nighttime work is being performed.
> (3) Weekly during the hours of darkness when only daylight work is being performed.
> (4) Weekly during hours of darkness when work is suspended for periods of more than one week, except when the project has been shut down for the winter.
> (5) Additional inspections, day or night, as directed by the CO.
> (6) Before winter suspension, conduct an inspection of the project with the CO to ensure proper provisions are made for winter travel during the period of suspension.
> (7) During periods of winter suspensions, inspect only as requested by the CO.

A160.

6. Subsection (c) of section 635.13 of the contract -- Temporary Pavement Markings and Delineation -- states, in pertinent part:

> Raised pavement markers. Do not use raised pavement markers during seasonal suspensions. When chip seals, slurry seals, or tack coats are used after marker placement, protect the markers when an approved protective cover, which is removed after the asphalt material is sprayed.

A223.

7. Standard Specifications FP-96, section 401.07 provides:

> Weather Limitations. Place hot asphalt concrete pavement on a dry, unfrozen surface when the air temperature in the shade is above 2 C and rising and the temperature of the road surface in the shade conforms to Table 401-6.

A179.

**Contract Time And Modifications**

8. The contract's original completion date was August 10, 2005. A456.

9. Modification 0001 to the contract, which was issued unilaterally by FHWA on November 24, 2004, directed Tidewater to perform certain work. Modification 0001 stated, as the "description of amendment/modification," in pertinent part:

> In accordance with Subsection 105.01(a), you are directed to perform the following work:
>
> Provide two 3.6-meter wide paved travel lanes covering all sections of the roadway within the project limits which are not currently paved or do not conform to Subsection 108.0l(a). The order of paving operations will be determined in coordination with, and approved by, the CO. Schedule paving operations to begin no later than November 29, 2004, or give the CO a written explanation of why paving cannot begin that day, including a firm date on which paving will begin. The order of paving operations will be scheduled to ensure immediate coverage of areas that have no reasonable chance of achieving subgrade approval in the near future, and to maximize those areas that might still receive a lift of aggregate base prior to application of this temporary pavement surfacing.

A456-457.

10. Modification 0002 to the contract, which was issued unilaterally by FHWA on December 16, 2005, added 20 calendar days to the contract time. Modification 0002 stated, as the "description of amendment/modification":

> This modification will add 20 calendar days to the contract, changing the completion date from August 10, 2005 to August 30, 2005. There will be no increase to the contract amount as a result of this modification. This modification will not have any effect on any other provision on the contract.

A458. The FHWA's reasoning for issuing Modification 0002 was explained in correspondence

dated December 16, 2005. A537-40. In that correspondence, FHWA stated, in pertinent part:

> The purpose of this letter is to address weather related impacts to your construction operations on the subject project . . . .
>
> A Contracting Officer's Final Decision dated August 12, 2005 was issued which denied your request for additional contract time, due to weather related impacts, because you failed to provide adequate information to justify your request as is required by Subsection 108.03 of the FP-96. Specifically, you had not addressed 108.03(c), which states that you will provide a suggested new completion date or number of days supported by current and revised construction schedules according to Section 155. * * * Your requests have not provided rationale based on a valid critical path resulting from changes made to your original construction schedule. * * * You have been provided ample opportunity since our meeting on August 17, 2005 to provide a valid updated schedule with corrected deficiencies, and any rationale of how your critical path was impacted by weather related events. As of this date you have not made any effort to provide the FHWA with the necessary information required by the contract so an assessment might be made to arrive at a mutual agreement of contract time owed, if any. Therefore we will provide a unilateral determination of time based on information we consider relevant to the period of time you claim your operations were impacted by weather. As you are quite aware, you are significantly behind schedule. Since your request for additional time eludes to circumstances in October 2004 as the beginning of the causes for your delays, it is only rational to use the critical path from your October 2004 construction schedule update to evaluate weather related impacts. Also, since you failed to provide any construction schedules to this office between October 2004 and June 2005, your October 2004 construction schedule update will be used to make a determination of how weather impacted your critical path from October 2004 through June 2005. [A537-38]
>
> * * *
>
> **January 2005:** A winter suspension was scheduled from December 17, 2004 through February 7, 2005. No operations of Tidewater Contractors Inc. would be impacted by weather at this time. [A539]
>
> * * *

> Total time to be credited to Tidewater Contractors Inc. for weather related impacts from October 2004 through June 2005 is 20 calendar days. A unilateral change order for that amount of time has been attached to this letter that adjusts the completion date of your contract from August 10, 2005 to August 30, 2005. You will be credited the amount of liquidated damages for 20 calendar days in your next progress estimate. [A540]

Id.

11. Modification 0003 to the contract, which was issued unilaterally by FHWA on April 10, 2006, added seven calendar days to the contract time. Modification 0003 stated, as the "description of amendment":

Add the following to Page F-2 o f the SCR:

> The following FAR Clauses will be incorporated by reference and apply only to the work ordered under this modification:
> FAR 52.216-7, Allowable Cost and Payment, Alt. 1
> FAR 52.216-9, Fixed Fee;
> FAR 52.222-2, Payment for: overtime premiums, inserting "0" (zero) in the first paragraph (a)
> FAR 52.222-16, Approval of Wage Rates
> FAR 52.236- 18, Work Oversight in Cost-Reimbursement Construction
> FAR 52.236-19, Organization and Direction of Work
> FAR 52.242-1, Notice of Intent to Disallow Costs
> FAR 52.243-2, Changes - Cost Reimbursement, Alt III
> FAR 52.245-5, Government Property (Cost Reimbursement, Time-md- Materials, or Labor-Hour Contracts)
> FAR 52.249-6, Termination (Cost reimbursement)
>
> The time allowed for the completion of the contract will be increased by seven (7) calendar days as a result of this modification. The new completion date as a result of this modification will be September 6, 2005. The contract amount will be increased by up to $45,000.00 as a result of this modification. All work in this modification will be performed in accordance with applicable sections of the Standard Specifications FP96, plans and special contract requirements unless specifically stated above. This modification will have no change on any other contract

provisions.

A461.

12. Modification 0004 to the contract, which was issued unilaterally by FHWA on July 7, 2006, added 20 calendar days to the contract. Modification 0004 stated, as the "description of amendment/modification":

> This modification will add 20 calendar days to the contract, changing the completion date from September 6, 2005 to September 26, 2005. This modification is issued as a result of slope repairs completed between April 25, 2006 and June 21, 2006 that resulted from winter weather related damage. There will be no increase to the contract amount as a result of this modification. This modification will not have any effect on any other provision on the contract.

A463.

13. An additional 89 calendar days were added to the contract pursuant to a June 29, 2007 decision of the Civilian Board of Contract Appeals; the basis for the time extension was due to the late issuance of the Notice to Proceed by the FHWA. A11-17.

14. Among Modifications 2, 3, and 4, and the CBCA decision, a total of 136 calendar days were added to the contract. Adding these calendar days to the original contract completion date of August 10, 2005 produces a new contract completion date of December 24, 2005.

**Tidewater's Work During Winter 2004-2005**

15. Tidewater's original CPM Schedule included a winter suspension between December 17, 2004 and February 7, 2005. A466. In correspondence dated July 21, 2004, FHWA stated "this letter is to formally accept your initial Construction Schedule received on July 1,2004." A482.

16. Notes kept by the FHWA project engineer indicate that Tidewater performed

work on the project through at least the Christmas holiday in 2004. A1060 (12/17/04 -- Paving is going on again . . . [t]hey will do everything except through the rock cut area next week.”). The contractor’s daily logs indicate that paving work was being performed through at least December 21, 2004. A615.

17. On October 16, 2004, FHWA wrote to Tidewater and stated, in pertinent part:

> [A]s you are aware October 15 is the official start of the rainy season in California. At this time most of the project has not been stabilized both to prevent erosion and control sediment transport. Attached to this letter is the current 10-day weather forecast and severe weather alert for this area that shows rain tomorrow and into Tuesday of next week.

* * *

> What follows is a list that includes, but is not limited to, the observed deficiencies on the subject project . . . . * * * The described deficiencies noted cover all of the project . . . . Failure to take immediate action to correct deficiencies noted or otherwise apparent may result in portions of the work being suspended until the project can be brought into compliance with contract requirements.
>
> In addition, public safety will become an issue if this upcoming storm develops into anything like the attached weather report. You are required to continuously monitor the situation and maintain the roadway in such a way as to provide safe passage through the project at all times.

A484-85.

18. On November 9, 2004, FHWA wrote to Tidewater and stated, in pertinent part:

> Our client agencies are concerned that excess sedimentation of the Mad River may occur due to the close proximity of the project to the river. To satisfy their concerns, Subsection 108.01(a) was added to the contract documents during the design process to minimize the amount of project sediment entering the Mad River. The deadline date of that specification was chosen as a time where the first lift must be completed to avoid paving issues associated with the seasonal rains.

A492.

19. On November 24, 2004, FHWA unilaterally issued Modification 0001, directing Tidewater to perform certain paving work, "to begin no later than November 29, 2004." A457.

**Tidewater's Work During Winter 2005-2006**

20. Tidewater's CPM Schedule Narrative Update Version 9 Accelerated, dated November 12, 2005, indicates that Tidewater's own scheduled completion date for the project was December 16, 2005. A477. In this schedule update, Tidewater indicated that it would begin Activity 440 (paving ditches, curbs and driveways) on November 28, 2005; it would begin Activity 580 (road striping ) on December 12, 2005; and it would begin Activity 590 (sign removal) on December 16, 2005. A479.

21. On November 15, 2005, Tidewater wrote to FHWA to inform it of "continued paving," and indicated that it would cease paving activities for the Thanksgiving weekend on November 23, 2005, and resume paving activities on November 28, 2005. A501.

22. On November 17, 2005, FHWA wrote two letters to Tidewater. The first approved paving activities for Sunday, November 20, 2005. A506. The second stated, in pertinent part:

> [T]his is the second season that your have failed to complete the paving on areas open to construction by November 15. The contract requires that all areas open to construction have the first lift of asphalt according to the contract plans and specifications.
>
> * * *
>
> [I]n addition to the paving issues such work as delineators, object markers, guardrail, flume inlets and downdrains, signs and any other safety and erosion or sediment control work must be in-place prior to consideration of any partial winter suspension.

A508-09.

23. On November 18, 2005, Tidewater wrote to FHWA and stated, in pertinent part:

> As you are aware we are planning to set back to the intersection tomorrow afternoon November 18th and will have the bottom lift at the intersection completed, midday Saturday, November 19th. At the current production rate it would take less than fifteen full days of paving to complete all mainline paving through the top lift and at a minimum all bottom lift paving on the project. * * * During the time of year our oil supplier does not have the oil we are using on hand and they are producing for us no an as needed basis. I talked to them yesterday, prior to receiving your letter, and scheduled oil for the next five days based on starting mainline top lift Sunday November 20th.

A511.

24. On November 18, 2005, FHWA wrote to Tidewater, retracting its non-work directive over the 2005 Thanksgiving Day weekend, November 25-26, 2005. A518.

25. On November 28, 2005, FHWA wrote to Tidewater, stating, among other things, that pavement had been placed on the roadway on November 22 and 23, 2005. A520.

26. On December 6, 2005, FHWA wrote to Tidewater, stating, among other things, that Tidewater should use Pavement Markings, Type B "... when applying the striping throughout the project for the winter. . . . [and] By using this item during the winter suspension period it will effectively double the plan quantity since it will then need to be applied again next year prior to project completion." A533.

27. On January 30, 2006, Tidewater wrote to FHWA to inform it that Tidewater had arranged for striping work to be done upon the project; work began on January 24, 2006, and continued throughout that week. A546. Tidewater also stated:

> It is my understanding that FHWA has not issued a winter suspension and has maintained that liquidated damages will

> continue to be assessed until the striping is completed. Of course we do not agree with the continued assessment of L.D.s, but I would expect that we could now expect the winter suspension to be in full effect as well as discontinuing assessment of liquidated damages.

A546.

28. Daily paving quantity summaries for the project indicate that Tidewater placed temporary asphalt for winter on the project through December 16, 2005. A1450-53.

29. The Government project engineer's daily log for winter 2005-2006 indicates that Tidewater performed work on the project through December 16, 2005, to complete the first lift. A1087. The Government inspector's daily report sheets indicate that Tidewater performed paving work on the project beyond December 13, 2005. A984. The Government inspector's daily report sheets also indicate that Tidewater performed road striping on January 24, 2006. A1008. Tidewater's daily reports indicate that it performed paving activity upon the project through at least December 10, 2005. A834.

**<u>Tidewater's Claim To The Contracting Officer</u>**

30. On August 10, 2007, Plaintiff filed a claim with Defendant, designated by defendants as Claim XVI-07-003, CAPFH 149-1(2), seeking to have the 165 days of Contract Time charged by Defendant changed to non-chargeable days, and for the payment of $297,000 of contract payments to Plaintiff which had been assessed and withheld as liquidated damages. A1-3. Plaintiff stated that "recognition of winter suspension" was the basis of its claim. Plaintiff also identified the 89 days granted under the CBCA decision, as well as Modifications 0002, 0003, and 0004 as extending contract performance into the alleged period of winter suspension. <u>Id.</u>

31. The contracting officer issued his final decision upon Tidewater's claim on December 14, 2007. The contracting officer denied the claim. A4-10.

PLAINTIFF'S SEPARATE STATEMENT OF FACT

32. Weather during the Fall, Winter and Spring months limited the contractor's operations and caused delays in contract completion as recognized in Modification 2. As noted in the letter accompanied by Modification 2, "The weather data used for our computations came from the California Department of Water Resources, Ruth Water Data Collection Station, located in Ruth, California." Weather data from the Ruth Station demonstrates daily and average monthly/annual rainfall totals from 1996 to 2006. A1454.

33. As of November 15, 2005, the items of contract work which remained to be completed were limited to base rock placement, paving, pavement repairs in the overlay section, work at the box culverts, permanent erosion control measures, and items which were dependant on the completion of paving, such as guardrail, delineators, pavement markings and other such traffic safety devices. These were the remaining activities in contractor's schedule version 10. A1461-1471.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Reginald T. Blades, Jr. (by S. Gillingham)
REGINALD T. BLADES, JR.
Assistant Director

s/ Joseph A. Yazbeck, Jr.
JOSEPH A. YAZBECK, JR.
Yazbeck, Cloran & Hanson, LLC
1300 SW 5th Ave.
Suite 2750
Portland, Oregon 97201
Tel. (503) 227-1428
Fax. (503) 227-4866

Attorney for Plaintiff

s/ Devin A. Wolak
DEVIN A. WOLAK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L St., N.W.
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530
Tel. (202) 616-0170
Fax. (202) 305-7644

Attorneys for Defendant

July 25, 2008

**CERTIFICATE OF FILING**

I hereby certify that on July 25, 2008, a copy of the foregoing "JOINT STIPULATION OF FACTS AND APPENDIX" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Devin A. Wolak

**TIDEWATER CONTRACTORS, INC. v. UNITED STATES**
Fed. Cl. No. 08-128

**APPENDIX TO JOINT STIPULATION OF FACTS**

8/10/2007 Claim . . . . . A1

12/14/2007 Contracting Officer's Final Decision . . . . . A4

6/29/2007 CBCA Decision Awarding 89 Day Extension . . . . . A11

Contract . . . . . A18

Appendices to Contract . . . . . A237

Contract Modifications . . . . . A456

Modification 0001 . . . . . A456
Modification 0002 . . . . . A458
Modification 0003 . . . . . A459
Modification 0004 . . . . . A463

Scheduling Documents . . . . . A464

Baseline Schedule . . . . . A464
10/24/2004 Schedule Update . . . . . A475
7/1/2005 Schedule Update . . . . . A477

Correspondence . . . . . A482

7/21/2004, FHWA to Tidewater . . . . . A482
10/16/2004, FHWA to Tidewater . . . . . A484
10/26/2004, Tidewater to FHWA . . . . . A486
11/4/2004, Tidewater to FHWA . . . . . A490
11/9/2004, FHWA to Tidewater . . . . . A492
12/22/2004, FHWA internal facsimile . . . . . A495
6/27/2005 Cure Notice . . . . . A497
11/8/2005, Tidewater to FHWA . . . . . A499
11/9/2005, FHWA to Tidewater . . . . . A500
11/15/2005, Tidewater to FHWA . . . . . A501
11/15/2005, FHWA to Tidewater . . . . . A502
11/17/2005, Tidewater to FHWA . . . . . A504
11/17/2005, FHWA to Tidewater re Superpave Asphalt Pavement . . . . . A506
11/17/2005, FHWA internal facsimile . . . . . A507
11/17/2005, FHWA to Tidewater re Schedule Update 9 . . . . . A508
11/18/2005, Tidewater to FHWA . . . . . A510

11/18/2005, FHWA to Tidewater . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A517
11/28/2005, FHWA internal facsimile . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A519
11/28/2005, FHWA to Tidewater . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A520
11/28/2005, FHWA internal facsimile . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A524
11/28/2005, FHWA to Tidewater . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A525
12/6/2005, FHWA to Tidewater . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A533
12/9/2005, FHWA internal facsimile . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A534
12/9/2005, FHWA to Tidwater . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A535
12/12/2005, Mercer Fraser to Tidewater . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A536
12/16/2005, FHWA to Tidewater . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A537
3/26/2006, Tidewater to FHWA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A541
4/5/2006, Mercer Fraser to Tidewater . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A543
1/30/2006, Tidewater to FHWA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A546
7/7/2006, FHWA to Tidewater . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A547

Contractor’s Daily Reports . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A548

Government Daily Reports . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A840

Project Engineer Diary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A1049

Contractor’s Certified Payroll . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A1094

Subcontractors’ Certified Payroll . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A1418

Asphalt Concrete Pavement and Aggregate Base Summary Quantity Sheets . . . . . . . . . . . A1450

Tidewater Chart of California Rain Data . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A1454

Tidewater Schedule Update 9 (bar chart) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A1455

Tidewater Schedule Update 10 (narrative and bar chart) . . . . . . . . . . . . . . . . . . . . . . A1461