No. 08-128C
(Judge Horn)

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

TIDEWATER CONTRACTORS, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

REGINALD T. BLADES, JR.
Assistant Director

DEVIN A. WOLAK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L St., N.W.
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530
Tel. (202) 616-0170
Fax. (202) 305-7644

September 12, 2008

Attorneys for Defendant

# TABLE OF CONTENTS


STATEMENT OF THE ISSUES . . . . . 1

STATEMENT OF THE CASE . . . . . 2

I. Nature Of The Case . . . . . 2

II. Statement Of Facts . . . . . 3

A. The Contract And Relevant Clauses . . . . . 3

B. Contract Completion Date . . . . . 4

C. Tidewater's Winter Work In 2004-2005 And 2005-2006 . . . . . 5

D. Tidewater's Claim To The Contracting Officer . . . . . 6

ARGUMENT . . . . . 7

I. Standard Of Review . . . . . 7

II. The Contract Does Not Entitle Tidewater To A Winter Suspension . . . . . 8

III. Tidewater's Time Extensions Consisted Of Calendar Days Which Must Be Added On To The Completion Date . . . . . 11

IV. Tidewater Is Not Entitled To The Claimed Winter Suspension Because It Actually Worked During The Time Period For Which It Claims A Suspension . . . . . 12

V. Tidewater Is Not Entitled To The Return Of Any Liquidated Damages . . . . . 14

CONCLUSION . . . . . 14

# TABLE OF AUTHORITIES

## CASES


Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) . . . . . 7

Appeal of Consolidated Construction, Inc.,
ASBCA No. 46498, 1998 WL 838438,
aff'd, 230 F.3d 1378 (Fed. Cir. 2000) (table) . . . . . 14

Appeal of J.F. Whalen & Co.,
1988 WL 86600 (Ag.B.C.A. 1988),
aff'd, 895 F.2d 1422 (Fed. Cir. 1990) (table) . . . . . 10

Broome Constr., Inc. v. United States,
492 F.2d 829 (Ct. Cl. 1974) . . . . . 10

Bubble Room, Inc. v. United States,
159 F.3d 553 (Fed. Cir. 1998) . . . . . 7

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) . . . . . 7

Earth Burners, Inc. v. United States,
43 Fed. Cl. 481 (1999) . . . . . 7

Fru-Con Constr. Corp. v. United States,
44 Fed. Cl. 298 (1999) . . . . . 10

Gardiner, Kamya & Associates, P.C. v. Jackson,
467 F.3d 1348 (Fed. Cir. 2006) . . . . . 8

Martin J. Simko Constr., Inc. v. United States,
11 Cl. Ct. 257 (1986) . . . . . 11

McAbee Construction, Inc. v. United States,
97 F.3d 1431 (Fed. Cir. 1996) . . . . . 8

Prineville Sawmill Co. v. United States,
859 F.2d 905 (Fed. Cir. 1988) . . . . . 7

Seal-Flex, Inc. v. Athletic Track and Court Const.,
98 F.3d 1318 (Fed. Cir. 1996) . . . . . 7

Sweats Fashions, Inc. v. Pannill Knitting, Inc.,
833 F.2d 1560 (Fed. Cir. 1987) . . . . . . . . . . 7

Thermocor, Inc. v. United States,
35 Fed. Cl. 480 (1996) . . . . . . . . . . 7

Vicari v. United States,
47 Fed. Cl. 353 (2000) . . . . . . . . . . 10

Wunschel & Small, Inc. v. United States,
1 Cl.Ct. 485 (1982) . . . . . . . . . . 10

**RULES AND REGULATIONS**

FAR § 2.101 . . . . . . . . . . 11

FAR § 52.211-10 . . . . . . . . . . 11

FAR § 52.211-12 . . . . . . . . . . 11

FAR § 52.236-15 . . . . . . . . . . 12, 13

FAR § 52.249-10 . . . . . . . . . . 10

RCFC 56 . . . . . . . . . . 1, 7

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| TIDEWATER CONTRACTORS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 08-128C |
| v. | ) | |
| | ) | (Judge Horn) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56(b) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court grant summary judgment in favor of the United States because there are no genuine issues of material fact and the United States is entitled to judgment as a matter of law. In support of this motion, we rely upon the plaintiff's complaint, the parties' Joint Stipulation Of Facts and the appendix thereto, and the following brief.

**STATEMENT OF THE ISSUES**

1. Whether Tidewater Contractors, Inc. is entitled to a winter suspension between November 15, 2005 and April 24, 2006, in connection with its performance under contract no. DTFH68-04-C-00003.

2. Whether Tidewater Contractors, Inc. is entitled to the return of liquidated damages assessed against it for time between November 15, 2005 and April 24, 2006.

3. Whether Tidewater Contractors, Inc. is entitled to the return of liquidated damages assessed against it for time between May 26, 2006 and May 29, 2006.

## STATEMENT OF THE CASE

I. Nature Of The Case

Tidewater Contractors, Inc. (Tidewater), contracted with the United States Department of Transportation, Federal Highway Authority (FHWA), to perform certain work upon the Mad River Road, located within the Six Rivers-Trinity National Forest. During performance, Tidewater experienced several delays. Tidewater has chosen to pursue its delay claims in a piecemeal fashion, and this case involves only one of the several delay issues that arose during performance of the project.

Specifically, the Civilian Board of Contract Appeals issued a decision holding that Tidewater was entitled to a compensable contract modification for 89 days of delay caused by the Government's failure to issue the Notice To Proceed ("NTP") in a timely fashion. See Joint Stipulation of Facts ("JSF") at ¶ 13; Appendix to JSF at A11-17. Following that decision, the FHWA modified the contract to extend the completion date by 89 calendar days to December 24, 2005.

Tidewater, now, claims that the contract entitles it to an annual "winter suspension" between November 15 and April 24, and further claims that this alleged contractual requirement, combined with the recently awarded 89-day extension: (1) stopped the contract time from running on November 15, 2005, the 50th day of the 89-day extension; (2) started the remaining 39 days of contract time running again on April 24, 2006; (3) but, because the 2006 Memorial Day weekend occurred before those 39 calendar days ran out, the contract time stopped again on May 26, 2006 (the 32d day of the remaining 39); (4) the contract time started again after Memorial Day weekend was over, on May 29, 2006; and (5) the new contract completion date should be Monday, June 5, 2006.

However, the contract does not require the winter suspension alleged by Tidewater, and the 89-day extension granted by the CBCA should be applied upon a strict calendar day basis. Moreover, Tidewater's claim of a winter suspension stands in stark contrast to the project record, which indicates that Tidewater performed work well into the "winter suspension" it claims.

Tidewater's claim is no more than an attempt to stretch the 89-day extension granted by the CBCA into a 254-day extension. The contracting officer was correct to deny this claim, and we respectfully request that the Court grant our motion for summary judgment.

II. Statement Of Facts

A. The Contract And Relevant Clauses

On November 26, 2003, the FHWA and Tidewater entered into contract no. DTFH68-04-C-00003 (the "contract"), under which Tidewater agreed to perform certain work upon the Mad River Road in the Six Rivers-Trinity National Forest in exchange for the contract price of $11,435,825. JSF ¶1.

The contract modified Section 108.01 of the Standard Specifications For Construction Of Roads And Bridges On Federal Highway Projects (FP-96) (incorporated into the contract), to add, in pertinent part:

> Limit operations as follows: (a) Confine roadway construction operations to a cumulative length not to exceed 4000 meters of two-lane roadway without existing pavement or the first lift of new pavement in place. Do no remove or pulverize the pavement on any portion of the existing roadway outside the cumulative length until all portions within the cumulative length have been completed through the first lift of asphalt according to the contract plans and specifications. Additionally areas open to construction must be completed through the first lift of asphalt prior to November 15. The CO may increase the construction limits of any area of construction if the Contractor can illustrate, by means of construction schedule and current construction rates, that the work will meet the above requirements and will be completed prior to

> November 15. Do not remove the pavement from any of the existing roadway between November 1 and April 1 without prior approval from the CO. Include construction of the intersection with SH 36 within the first season of work.
>
> Remove all dirt and debris from the existing pavement within the project limits each day upon completion of construction operations. All damaged pavement within the project limits must be patched or repaired prior to winter shutdown or November 15 at no cost to the Government. Patch or repair all damaged pavement according to Section 417 to provide a maintainable temporary roadway surface. Failure to repair damage to existing pavement will result in suspension of project work in accordance with Subsection 108.05. Suspension will remain in effect until the pavement conditions are improved to the satisfaction of the CO and the Trinity County Department of Transportation.

JSF ¶ 2.

The contract also prohibited work on several specified days throughout the year: Memorial Day, Independence Day, Ruth Rodeo (first weekend in August), Renaissance Fair (second weekend in August), Labor Day, Columbus Day, and Veterans Day. JSF ¶ 3. The contract did not prohibit work on Thanksgiving Day, Christmas Day, New Years Day, Martin Luther King, Jr.'s birthday, or Washington's birthday. Id.

Standard Specifications FP-96, section 401.07 provides:

> Weather Limitations. Place hot asphalt concrete pavement on a dry, unfrozen surface when the air temperature in the shade is above 2 C and rising and the temperature of the road surface in the shade conforms to Table 401-6.

JSF ¶ 7.

B. Contract Completion Date

The contract's original completion date was August 10, 2005. JSF ¶ 8. The completion

date was extended four times, through modifications 0002, 0003, 0004, and 0005,[1] setting the final completion date at December 24, 2005. JSF ¶ 9-14.

C. Tidewater's Winter Work In 2004-2005 And 2005-2006

Despite Tidewater's claim in this case that the contract required an annual winter suspension between November 15 and April 24, on the job, Tidewater did not recognize this allegedly mandatory suspension and performed work during both of the winters during the time when Tidewater was performing the contract.

Tidewater's original CPM Schedule, which was accepted by the FHWA, included a winter suspension between December 17, 2004 and February 7, 2005. JSF ¶ 15. Notes kept by the FHWA project engineer indicate that Tidewater performed work on the project through at least the Christmas holiday in 2004. JSF ¶ 16. Tidewater's own daily logs indicate that paving work was being performed through at least December 21, 2004. Id. On October 16, 2004, the FHWA wrote to Tidewater and informed it that the rainy season was approaching, and Tidewater was behind schedule because work necessary to prevent erosion around the road had not been completed. JSF ¶ 17. The FHWA wrote to Tidewater about its lack of satisfactory progress again on November 9, 2004, and highlighting that the purpose of subsection 108.01(a) of the contract was "to minimize the amount of project sediment entering the Mad River [and that t]he deadline date of that specification was chosen as a time where the first lift must be completed to avoid paving issues associated with the seasonal rains." JSF ¶ 18. Because Tidewater had not finished the necessary paving work to make the road safe for the winter months, on November

---

[1] Modification 0005 was issued as a direct result of the June 29, 2007 decision of the Civilian Board of Contract Appeals ("CBCA"), which granted Tidewater an 89-day time extension due to the late issuance of the Notice to Proceed by the FHWA. JSF ¶ 13.

24, 2004, the FHWA unilaterally issued Modification 0001, directing Tidewater to perform certain paving work, "to begin no later than November 29, 2004." JSF ¶ 19.

Tidewater also performed work during the winter of 2005-2006. Tidewater's CPM Schedule Narrative Update Version 9 Accelerated, dated November 12, 2005, indicates that Tidewater's own scheduled completion date for the project was December 16, 2005. JSF ¶ 20. That schedule update indicated that the following work would be done after November 15, 2005: paving ditches, curbs and driveways; road striping; and sign removal. Id. In correspondence during that time period, Tidewater acknowledged that it would be performing work long after November 15, 2005. See JSF ¶¶ 21-29.

D. Tidewater's Claim To The Contracting Officer

On August 10, 2007, Tidewater submitted its claim to the contracting officer, seeking to have the 165 days of contract time charged by the Government changed to non-chargeable days, and also seeking the return of $297,000 of assessed liquidated damages. JSF ¶ 30. Tidewater stated that the basis of its claim was the "recognition of winter suspension," the 89 days granted under the CBCA decision, and modifications 0002, 0003, and 0004. Id. In its claim, Tidewater asserted that it was entitled to 161 days of additional contract time, based upon a theory that the 89-day extension granted by the CBCA must be applied in such a manner that contract time is not counted during (a) an alleged "winter suspension" from November 15, 2005, to April 24, 2006; and (b) the 2006 Memorial Day weekend. Id.

The contracting officer denied Tidewater's claim on December 14, 2007. JSF ¶ 31.

## ARGUMENT

I. Standard Of Review

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). The moving party bears the initial burden of establishing the absence of any disputes of material fact. Seal-Flex, Inc. v. Athletic Track and Court Const., 98 F.3d 1318, 1321 (Fed. Cir. 1996) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When the movant has met its initial burden, the non-movant must respond with sufficient evidence to show that there is a material factual dispute and that, on the non-movant's evidence, the movant is not entitled to judgment as a matter of law." Id. Alternatively, if the moving party can show that there is an absence of evidence to support the non-moving party's case, then the burden shifts to the non-moving party to proffer such evidence. Celotex, 477 U.S. at 325. The Supreme Court has emphasized that the "[s]ummary judgment procedure is not properly regarded as a disfavored procedural shortcut but, rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action. . . .'" Celotex, 477 U.S. at 327 (citations omitted); accord Sweats Fashions, Inc. v. Pannill Knitting, Inc., 833 F.2d 1560, 1562 (Fed. Cir. 1987).

"When the parties have filed cross-motions for summary judgment, the court must evaluate each motion on its own merits. Earth Burners, Inc. v. United States, 43 Fed. Cl. 481, 486 (citing Thermocor, Inc. v. United States, 35 Fed. Cl. 480, 484 (1996) (citing Prineville Sawmill Co. v. United States, 859 F.2d 905, 911 (Fed. Cir. 1988))); see also Bubble Room, Inc. v. United States, 159 F.3d 553, 561 (Fed. Cir. 1998) ("Cross-motions are no more than a claim by each party that it alone is entitled to summary judgment, and the court must evaluate each

motion on its own merits, taking care in each instance to view the evidence in favor of the nonmoving party."). "The fact that both parties argue in favor of summary judgment and allege that there are no genuine issues of material fact does not relieve the court of its duty to decide whether summary judgment is appropriate." Id.

II. The Contract Does Not Entitle Tidewater To A Winter Suspension

Tidewater's claim turns upon whether the contract mandates a winter suspension. It does not. Although the contract prescribes that certain work must be completed by certain dates, and those dates were chosen because those particular items of work cannot be performed under winter conditions, the contract nowhere requires (or even suggests) a complete shutdown of operations during the winter.

The starting place for interpreting a contract is the text of the contract itself. Gardiner, Kamya & Associates, P.C. v. Jackson, 467 F.3d 1348, 1353 (Fed. Cir. 2006) (summarizing the Federal Circuit's "well-settled principles of contract interpretation"). If the words of the contract are clear, the plain meaning must be enforced:

> We begin with the plain language. [Citations omitted.] We must interpret the contract in a manner that gives meaning to all its provisions and makes sense. [Citations omitted.] Thus, if the "provisions are clear and unambiguous, they must be given their plain and ordinary meaning."

McAbee Construction, Inc. v. United States, 97 F.3d 1431, 1435 (Fed. Cir. 1996).

Tidewater claims that the contract's supplement to FP-96 § 108.01 mandates a winter shutdown. See JSF ¶ 2; Appendix to the JSF ("A"), at 138. Tidewater is not correct. That section provides in part:

> [A]reas open to construction must be completed through the first lift of asphalt prior to November 15. The CO may increase the construction limits of any area of construction if the Contractor can

> illustrate, by means of construction schedule and current construction rates, that the work will meet the above requirements and will be completed prior to November 15. Do not remove the pavement from any of the existing roadway between November 1 and April 1 without prior approval from the CO. Include construction of the intersection with SH 36 within the first season of work.
>
> Remove all dirt and debris from the existing pavement within the project limits each day upon completion of construction operations. All damaged pavement within the project limits must be patched or repaired prior to winter shutdown or November 15 at no cost to the Government.

AR 138. This section does not mandate a winter shutdown. It merely requires that one aspect of the contractor's work upon the road, i.e., the first lift of asphalt, will be completed by a certain date. It does not require that the contractor cease all work by November 15, or any other date.

As the contracting officer noted in her denial of Tidewater's claim, these clauses restrict "a relatively small percentage of the overall work on the project and certainly have no bearing on the Contractor working on many other aspects of the project." A7. The amendment to § 108.01 confirms that a winter suspension is not required by stating that certain work must be completed prior to winter shutdown or November 15, thus anticipating that a contractor might choose not to suspend work for the winter at all. Other contract provisions similarly give instructions relevant if the contractor chooses to schedule a suspension, but do not require a suspension. See JSF ¶¶ 4-7.

Additionally, one other provision of the contract anticipates winter work. The modification to FP-96 § 156.04 states that "[s]now removal to facilitate work is the Contractor's responsibility." A159. A contract that prohibits all work during the winter would not require such a clause.

Tidewater claims that certain contract modifications recognize a winter shutdown.

Although unilateral modifications 2, 3 and 4 all related to weather conditions, weather-related time extensions do not imply the existence of a winter suspension period. Extensions for severe weather can be granted upon a contractor's showing that weather was unusually severe and the weather caused a delay. FAR § 52.249-10(b); Vicari v. United States, 47 Fed. Cl. 353, 358 (2000) (noting that delays arising from severe weather are governed by §52.249-10 and that "[t]he sole remedy … is a time extension for completion of the project."); Fru-Con Constr. Corp. v. United States, 44 Fed. Cl. 298, 314 (1999) (holding that an extension cannot be granted "unless the contractor has shown that the weather actually had an adverse impact on critical work.") (internal quotation omitted). Time extensions are granted when weather was so unforeseeable as not to have been reasonably included by the contractor in its bid price. Broome Constr., Inc. v. United States, 492 F.2d 829, 835 (Ct. Cl. 1974) (defining "unusually severe weather" as "adverse weather which at the time of year in which it occurred is unusual for the place in which it occurred.").

A winter suspension, by contrast, stops contract time from running when work would be impractical due to normal winter conditions. See Wunschel, 1 Cl.Ct. at 490 (noting that inclement weather is "quite different" and "another class of weather" than unusually severe weather); Appeal of J.F. Whalen & Co., 1988 WL 86600 (Ag.B.C.A. 1988), aff'd, 895 F.2d 1422 (Fed. Cir. 1990) (table) (distinguishing contractor's claim for an extension because weather was "unusually severe" and claim that "the Government wrongfully refused to grant [contractor]'s request for a seasonal shutdown thereby forcing [the contractor] to attempt to make progress at a time when progress was difficult at best."). Contract extensions based upon unusually severe weather do not provide evidence that the contract contemplated, let alone required, a winter suspension.

## III. Tidewater's Time Extensions Consisted Of Calendar Days Which Must Be Added On To The Completion Date

The CBCA decision of June 29, 2007, which awarded Tidewater an 89-day time extension, extended the contract completion date by 89 calendar days; it did not, as Tidewater seems to contend, extend the contract by 89 non-winter days. See A17.

The FAR provision upon which Tidewater's 89-day claim was based, FAR § 52.211-10, states that, in the event of a delay caused by the late issuance of the notice to proceed, "[t]he completion date will be extended by the number of calendar days" between the date when the notice to proceed should have been issued and the date when it actually was issued. FAR § 52.211-10 (emphasis added); see A74 (incorporating FAR § 52.211-10 into the contract). Both the FAR and the FP-96 define "day" to mean "calendar day" unless another meaning is indicated. FAR § 2.101 ("Day means, unless otherwise specified, a calendar day."); FP-96 § 101 ("Day -- Each and every day shown on the calendar, beginning and ending at midnight."). Finally, the FAR and the contract specify that a calendar day is the relevant unit for calculating liquidated damages. See FAR § 52.211-12 ("If the Contractor fails to complete the work within the time specified in the contract, the Contractor shall pay liquidated damages to the Government … for each calendar day of delay until the work is completed or accepted."); A74 (incorporating § 52.211-12 into the contract); see also Martin J. Simko Constr., Inc. v. United States, 11 Cl. Ct. 257,274 (1986), vacated on other grounds, 852 F.2d 540 (Fed. Cir. 1988) (calling contractor's argument that liquidated damages should not be imposed for weekends or holidays "exceedingly novel and equally specious. . . . Under the standard clause . . . liquidated damages are assessed for each calendar day of delay.").

As demonstrated in section II, above, Tidewater's contract does not imply or require a

winter suspension; thus, there is no justification for Tidewater's claim that its extensions cannot be applied to the period between November 15 and April 24. Additionally, the contract was awarded on November 26, 2003, and had an original completion date of August 10, 2005. JSF ¶¶ 1, 8. Clearly, both FHWA and Tidewater were aware that the contract time would thus span all four seasons.

The contractor has considerable freedom to make its own schedule, subject to the contracting officer's approval. FAR § 52.236-15(a); A73 (incorporating clause into contract). Such a schedule would naturally take into account changing weather conditions throughout the year, but no reasonable contractor would assume that the stated completion date would be automatically moved back to account for the inevitable onset of winter. Indeed, in its original CPM baseline schedule, Tidewater scheduled a 2004-2005 winter suspension between December 17, 2004 and February 7, 2005, JSF ¶ 15, and still contemplated finishing all work by the original completion date. A464-76.

Tidewater understood the completion date to stand firm regardless of any winter suspension or slowdown. Because a contract extension -- such as those contained in modifications 2, 3, and 4 and as granted by the CBCA -- merely extends the contract completion date by a certain number of calendar days, a completion date incorporating extensions remains unaffected by winter just as the original completion date would.

## IV. Tidewater Is Not Entitled To The Claimed Winter Suspension Because It Actually Worked During The Time Period For Which It Claims A Suspension

Tidewater's assertion that it is entitled to a winter suspension between November 15, 2005 and April 24, 2006, implies that Tidewater did not do any work during that period. This is not true. Tidewater's CPM Schedule Narrative Update Version 9 Accelerated, dated November

12, 2005, indicates that Tidewater's own scheduled completion date for the project was December 16, 2005 -- one month after the beginning of the suspension Tidewater now seeks. That same schedule update indicates that Tidewater planned to perform work beyond November 15, including paving ditches, curbs and driveways, road striping, and sign removal. JSF ¶ 20.

On November 15, 2005, the day the alleged winter suspension was to begin, Tidewater wrote to the FHWA to inform it of "continued paving," and indicated that only the Thanksgiving holiday (November 23-28, 2005) would interrupt those paving activities. JSF ¶ 21. Correspondence between Tidewater and the FHWA continued through mid-December indicating that Tidewater was actually continuing to work upon the project during the "winter suspension" Tidewater alleges in this lawsuit. See JSF ¶¶ 22-29.

Because a seasonal suspension implies a complete cessation of work, Tidewater cannot claim, after the fact, that a winter suspension period existed during time when it actually performed work on the project.

This is true even if Tidewater's work during this time was compelled by the Government. The project record indicates that Tidewater was still behind schedule on December 24, 2005, the adjusted contract completion date. Once a contractor falls behind schedule, it no longer has complete freedom to organize its own time (e.g., suspending work when it would be less convenient but still practicable to perform). See FAR § 52.236-15(b) ("If, in the opinion of the Contracting Officer, the Contractor falls behind the approved schedule, the Contractor shall take steps necessary to improve its progress, including those that may be required by the Contracting Officer, without additional cost to the Government). The ASCBA interpreted section 52.236-15 to mean that:

> the luxury of unfettered management discretion disappears if "the Contractor falls behind the approved schedule." Once that happens, … the contracting officer is authorized to require the contractor to "take steps necessary to improve its progress . . . without additional cost to the Government," and may require the contractor to "increase the number of shifts, overtime operations, days of work, and/or the amount of construction plant."

Appeal of Consolidated Construction, Inc., ASBCA No. 46498, 1998 WL 838438 (emphasis added), aff'd, 230 F.3d 1378 (Fed. Cir. 2000) (table).

Because the contract does not require a winter suspension, FHWA, upon finding that Tidewater was behind schedule, was entitled to require that certain work be completed "prior to consideration of any partial winter suspension." A508-509 (Project Engineer's letter to Tidewater not accepting schedule update #9, containing the proposed 2005-2006 winter suspension).

V. Tidewater Is Not Entitled To The Return Of Any Liquidated Damages

Because Tidewater cannot establish a basis to essentially add 165 days to its 89-day time extension, the contract completion date must remain set at December 24, 2005. Accordingly, Tidewater is not entitled to the return of the liquidated damages already assessed for its own failure to complete the project by that date.

## CONCLUSION

For these reasons, the defendant respectfully requests that the Court grant the defendant's motion to for summary judgment and dismiss the complaint.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Reginald T. Blades, Jr.
REGINALD T. BLADES, JR.
Assistant Director

s/ Devin A. Wolak
DEVIN A. WOLAK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L St., N.W.
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530
Tel. (202) 616-0170
Fax. (202) 305-7644

September 12, 2008

Attorneys for Defendant

**CERTIFICATE OF FILING**

I hereby certify that on September 12, 2008, a copy of the foregoing "DEFENDANT'S MOTION FOR SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Devin A. Wolak